UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAIME R. EARNHART,

    Plaintiff,

v.                                       CASE NO.: 3:18-cv-00666-PPS-MGG

NANCY A. BERRYHILL,
 Acting Commissioner of the Social
Security Administration,

    Defendant.

**OPINION AND ORDER**

      Jaime Earnhart appeals the Social Security Administration's decision to deny her application for Disability Insurance Benefits under Title II of the Social Security Act. Earnhart alleged she is disabled due to the following conditions: osteoarthritis in the knees, GERD, endometriosis, migraines interstitial cystitis, as well as mental health disorders. [A.R 79.][1] The main focus throughout the ALJ's opinion and thus this opinion as well, is on Earnhart's migraines caused by her endometriosis. The ALJ found that Earnhart was not disabled within the meaning of the Social Security Act and that she had the Residual Functional Capacity (RFC) to perform a range of sedentary work with some restrictions and could perform her past relevant work as an electrical design engineer.

---

[1] Citations to the Administrative Record, will be indicated as [A.R __] and indicate the pagination found in the lower right-hand corner of the record found at DE 9.

-1-

On appeal, Earnhart challenges this result. Earnhart claims the ALJ failed to account for all of her impairments as part of the RFC and specifically, failed to account for time off task due to her debilitating migraine headaches. She says this was the result of the ALJ's failure to adequately consider medical opinion evidence and migraine journals offered into evidence. Earnhart also claims the ALJ failed to provide a more-than-perfunctory evaluation of whether her migraine headaches could equal listing 11.02(a) and failed to consider an expert opinion on the subject. I agree with Earnhart that the ALJ failed to adequately consider and address the relevant evidence and thus failed to adequately support his findings. Because the ALJ in this case did not adequately consider and evaluate all of the relevant evidence, his ultimate finding that Earnhart is not disabled cannot stand. Accordingly, the ALJ's decision will be reversed.

**Background**

Ms. Earnhart filed her initial application on December 15, 2016. At the time of the hearing, she was 39 years old. [A.R. 31.] She is a navy veteran, a mother of three children and had a bachelor's degree in electrical engineering technology. [A.R. 31-32.] She alleged disability beginning January 20, 2011. [A.R 79.] Her endometriosis caused her to have stomach flu-like symptoms by causing scar tissue to pull on the nerves in her abdomen which trigger migraines. She said these migraines occur on average 10 days a month and averaging about five hours in duration each occurrence. [A.R. 39, 41.] Endometriosis causes her constant abdominal pain which worsens with any kind of abdominal activity, such as walking too much, taking too big of a step, and twisting the wrong way. [A.R. 41.] Earnhart also has lesions on her bladder and bowels causing damage to the lining of

her bladder, diagnosed as interstitial cystitis. This condition causes her to feel as if she has a bladder infection and causes irritable bowel syndrome. [A.R. 39.] Lastly, an allergy to dust also triggers her migraines, with no treatment other than to lay down, take medicine, and wait for it to pass. [A.R. 42.]

In evaluating Earnhart's application, the ALJ engaged in the familiar five-step process to determine disability. At step one, the ALJ found that Earnhart did not engage in substantial gainful activity during the period from her alleged onset date of January 20, 2011. [A.R 12.]

At step two, the ALJ determined whether Earnhart had any severe impairments which could render her disabled. The ALJ found the following severe impairments: endometriosis, interstitial cystitis, and migraines. [A.R 12.] Earnhart also alleged disability based upon degenerative changes in the left knee and degenerative joint disease of the first metatarsophalangeal joint of the right foot. [A.R. 15-16.] The ALJ determined that these impairments did not impose more than minimal limitations on Earnhart's functioning and, therefore, were nonsevere. [*Id.*] Lastly, Earnhart alleged disability based on mental impairments of dysthymic disorder, major depressive disorder, and anxiety disorder. The ALJ found that these disorders did not cause more than minimal limitations on Earnhart's ability to perform basic mental work activities and were, therefore, nonsevere. In order to come to this conclusion, the ALJ went through the four areas of mental functioning criteria. The first area is understanding, remembering, or applying information. The ALJ found that Earnhart had a mild limitation because she only had problems when she was having a migraine and reported no problems otherwise

following written or spoken instructions. [A.R 13.] The next area is interacting with others. The ALJ found that she had a mild limitation based on feeling lonely, lacking good friends, and conflicts with a roommate, but she also reported participating in other social activities and had no problem getting along with others. [*Id.*] The third area is concentrating, persisting, or maintaining pace. The ALJ found that she had a mild limitation because she reported no problems with attention or concentration difficulties, but found pace was likely limited due to pain. [*Id.*] The last functional area is adapting or managing oneself. The ALJ found that she had a mild limitation because she reported no problems doing normal daily activities but had to lay down in pain a lot. [A.R 12-13.] Therefore, because the ALJ found no limitation to be more than mild, the mental impairments were nonsevere. [A.R 13.]

Based on these findings, the ALJ found that Earnhart did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. [A.R 14.] The ALJ gave specific attention to the following listings: 6.00 (genitourinary disorder), SSR 15-1p (interstitial cystitis), and 11.00 (neurological disorders).

Finding she did not meet any listing, the ALJ went on to determine her Residual Functional Capacity to be as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds. The claimant must have avoided unprotected heights, moving mechanical parts, and operating a motor vehicle. She could tolerate occasional exposure to dust, odors, fumes, and other pulmonary

> irritants in the work environment. The claimant could tolerate moderate noise in the work environment.

[A.R 14-15.] In reaching this RFC determination, the ALJ stated he considered all symptoms and analyzed the consistency of the symptoms with the objective and opinion evidence. Next, the ALJ evaluated the intensity, persistence, and limiting effects of Earnhart's symptoms to determine the extent to which they limit her functional limitations. Apart from the objective medical evidence, the subjective weighing of opinions came from Kathryn Nicholson, MSN, FNP (given little weight); the Department of Veterans' Affairs (given little weight); Joshua Eskonen, D.O., the medical consultant at the reconsideration level (given little weight); and Elaine Earnhart, Earnhart's daughter (given some weight). The ALJ's written decision does not discuss Jessica Glassman, a nurse practitioner with the VA who also offered medical opinion testimony on Earnhart's behalf.

At step four, the ALJ determined that Earnhart could perform past relevant work as an electrical design engineer based on the hypotheticals asked by the ALJ judge to the vocational expert (VE). The VE further testified that given the hypothetical limitations she could hold sedentary jobs as an addresser, document preparer and table worker/inspector. [A.R 19.] Based on this evidence, the ALJ found Earnhart to be not disabled and her application was denied.

## Discussion

My role in reviewing the ALJ's decision is generally deferential. I look to determine whether the ALJ applied the correct legal standards and whether the

decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ does not have to "discuss every piece of evidence, but when the ALJ fails to support [their] conclusions adequately, remand is appropriate." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "[A]n ALJ cannot rely only on the evidence that supports [their] opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). And while there may be some evidence which need not be addressed because it is wholly duplicative or irrelevant, the ALJ "cannot ignore a line of evidence that suggests a disability." *Id*.

Earnhart raises two main arguments, but I will only address one, as it provides a sufficient basis to reverse. Specifically, Earnhart says that the ALJ failed to adequately address and consider medical source opinion from Nurse Practitioner (NP) Jessica Glassman and that as a result, the RFC determination left out important limitations relating to absenteeism and time off task from migraines.

As part of her application, Earnhart submitted a Disability Benefits Questionnaire filled out by NP Glassman through the Department of Veterans Affairs. In this document, NP Glassman documents Earnhart's medical history with a focus on her migraines and related plain. [A.R. 248-250.] It references the findings of Dr. VanEvery from the VA Medical Center in Indianapolis that her migraines were caused by "scar tissue from the endometriosis pulling on her nerves and her body reacts to the

pain causing the migraine and vomiting/GI upset." [A.R. 248.] NP Glassman continued, noting that Earnhart's "migraines can last anywhere form 24 hours to 5 days. The migraines can also cause a massive spike in blood pressuring." [*Id.*] Later, when describing the "functional impact" of the migraines NP Glassman noted their "duration and severity is typically very debilitating." [A.R. 250.]

The Commissioner does not really challenge the fact that the ALJ did not discuss NP Glassman's opinion. [DE 15 at 6-7.] Instead, the Commissioner argues that the ALJ's failure to address NP Glassman's opinion doesn't matter. Specifically, it says that the finding that that Ms. Earnhart had "very debilitating" headaches, is akin to saying "disabled" and argues this is improperly usurping the ultimate determination of disability which is reserved to the ALJ and the Commissioner. [*Id.* at 6.] I find this justification unavailing.

The Commissioner fails to cite any case law supporting its argument that the phrase "typically very debilitating" is the same as saying someone is legally disabled. Common sense dictates they are different words with different meanings, especially when NP Glassman's description is read in the context of her larger opinion. [A.R. 248-250.] Earnhart is not insisting that the VA's decision on disability is outcome determinative here. The issue is that the ALJ did not address this medical opinion whatsoever in the written opinion. And the Commissioner's after-the-fact cherry-picking one bit of language to try to poison and then write-off the entire medical opinion isn't persuasive.

The Commissioner also says NP Glassman's opinion is not entitled to any weight because it was based on Earnhart's subjective reports of her pain, not objective evidence. I find this argument unavailing as well. First, "pain is always subjective in the sense of being experienced in the brain." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Second, Earhart was prescribed numerous pain medications by her doctors. This is objective medical evidence of pain. And while not specifically related to pain, there are also the references to Dr. VanEvery's statements (reported by NP Glassman) as to the causes of Earnhart's migraines, her migraine journal, and NP Glassman's notations that the migraines caused a spike in Earnhart's blood pressure. This is all also objective medical evidence which must be considered before a proper finding that Earnhart is not disabled can be found, but the ALJ did not address it.

The ALJ's main reason for rejecting the evidence of Earnhart's pain levels was what the ALJ called Earnhart's "wide range of activities of daily living." [A.R. 17.] The ALJ pointed to the fact Earnhart homeschooled her children, cooked, cleaned, took care of her pets, grocery shopped, went to church, and went camping a few times during the relevant time period. [*Id.*] Earnhart testified that homeschooling took about two hours of instruction a day and that the timing of the instruction depended on her migraines. [A.R. 47-50.] She testified that she prepared food ahead of time when she felt well so her kids could reheat snacks and meals as needed. [*Id.* at 51.] Considering this, merely pointing to the fact Earnhart performed household chores, some other tasks, and homeschooled her children does not provide a sufficient basis to say her pain was not as severe. Earnhart's main issue were migraines unexpectedly occurring and then

-8-

lasting several hours. Disabled for purposes of Social Security does not mean bedridden 24 hours a day, 7 days a week, 365 days a year, without the ability to do absolutely anything at any time. Performing household tasks a couple hours a day is not the same thing as engaging in substantial physical activity or working fulltime. *Clifford v. Abfel*, 227 F.3d 863, 872 (7th Cir. 2000). The Seventh Circuit has indicated that when a claimant's primary impairment is pain, an ALJ must "consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Carradine*, 360 F.3d at 755. The ALJ didn't do that here.

While the evidence suggesting disability by NP Glassman cannot "establish the existence of a medically determinable impairment" SSR 06-03P, it is evidence which must be considered "when evaluating 'key issues such as impairment severity and functional effects.'" *Id*. "In deciding how much weight to give to opinions from other medical sources," such as a nurse practitioner, "an ALJ should apply the same criteria listed in § 404.1527(d)(2)" *i.e.*, the same framework used to evaluate acceptable medical source opinions on issues of disability and impairment. *Id.* Here, the ALJ did not even mention the opinion, let alone identify any evidence that contradicted the opinion or reasoning as to why they gave no weight to the opinion. Since "[The] ALJ must consider . . . nurse practitioners' opinions on the severity of a patient's impairments," the failure to do so here necessitates a reversal and remand. *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018).

The failure to even mention NP Glassman's assessment unsettles the foundations of the ALJ's RFC determination. Specifically, the RFC here accounted for no time off task or absences as a result of Earnhart's migraines. As Earnhart notes on appeal, the VE here testified that even one absence within a 90-day probationary period at a job might result in dismissal, and that missing one day a month above and beyond sick time or vacation would result in dismissal. [A.R. 73-74.] This testimony is hard to square with an individual who has suffers multiple debilitating migraines per month and which last an average of five hours (more than half a standard work day) each.

Because I find that the failure to consider and evaluate the opinions of NP Glassman made the ALJ's resulting RFC determination insufficiently supported, I need not address Earnhart's remaining arguments and express no view on their merits at this time.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying Plaintiff Jaime Earnhart Disability Insurance Benefits is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

SO ORDERED on August 16, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT